UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MARCUS WALKER #374618,

    Plaintiff,               NO. 2:21-cv-12874

v                       HON. DENISE PAGE HOOD

DR. MARY GREINER, *et al.*,    MAG. PATRICIA T. MORRIS

    Defendants.

_____

| | |
|---|---|
| Marcus Walker #374618 | CHAPMAN LAW GROUP |
| *In Pro Per* | Nicholas B. Pillow (P83927) |
| Gus Harrison Correctional Facility | Jonathan C. Lanesky (P59740) |
| 2727 East Beecher Street | Attorneys for Defendants for |
| Adrian, MI  49221 |   Dr. Coleman, Dr. Papendick, |
| |   Dr. Dorsey, Dr. Greiner, PA Jindal |
| Allan J. Soros (P43702) |   and Pfeil |
| Assistant Attorney General | 1441 W. Long Lake Rd., Suite 310 |
| Attorney for MDOC Defendants | Troy, MI 48098 |
| Michigan Department of Attorney General | (248) 644-6326 |
| Corrections Division | |
| P.O. Box 30217 | |
| Lansing, MI  48909 | |
| (517) 335-3055 | |

_____/

**MDOC DEFENDANTS' MOTION TO DISMISS OR,
ALTERNATIVELY, FOR SUMMARY JUDGMENT
ON THE BASIS OF EXHAUSTION**

    MDOC Defendants Dr. Carmen McIntyre-Leon and RN Mary

Velarde, by counsel, bring this motion under Fed. Rs. Civ. P. 12(b)(6)

and 56(a), and ask the Court to enter its order dismissing Plaintiff's

Complaint and granting judgment in MDOC Defendants' favor, based on the grounds set forth in MDOC Defendants' accompanying brief.

Concurrence in this motion has not been sought because Plaintiff is an incarcerated prisoner proceeding in pro se.

Respectfully submitted,

_s/ Allan J. Soros_
Assistant Attorney General
Attorney for MDOC Defendants
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
sorosa@michigan.gov
P43702

Dated:  January 25, 2023

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MARCUS WALKER #374618,

     Plaintiff,                 NO. 2:21-cv-12874

v                            HON. DENISE PAGE HOOD

DR. MARY GREINER, *et al.*,     MAG. PATRICIA T. MORRIS

     Defendants.

_____

Marcus Walker #374618
*In Pro Per*
Gus Harrison Correctional Facility
2727 East Beecher Street
Adrian, MI  49221

Allan J. Soros (P43702)
Assistant Attorney General
Attorney for MDOC Defendants
Michigan Department of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055

CHAPMAN LAW GROUP
Nicholas B. Pillow (P83927)
Jonathan C. Lanesky (P59740)
Attorneys for Defendants for
  Dr. Coleman, Dr. Papendick,
  Dr. Dorsey, Dr. Greiner, PA Jindal
  and Pfeil
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326

_____/

## MDOC DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT <u>ON THE BASIS OF EXHAUSTION</u>

1

Allan J. Soros
Assistant Attorney General
Attorney for MDOC Defendants
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
sorosa@michigan.gov
P43702

Dated:  January 25, 2023

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  A Plaintiff must make a clear showing that each named Defendant was personally involved in the activity that forms the basis of the complaint.  Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act."  Plaintiff has not sufficiently alleged personal involvement of MDOC Defendant Dr. McIntyre-Leon.  Should Plaintiff's complaint against Dr. McIntyre-Leon be dismissed?

2.  A prisoner must exhaust his administrative remedies before filing a complaint under 42 U.S.C. § 1983. To properly exhaust, a prisoner must attempt to resolve the issue verbally within two business days of the offending event. A prisoner must then file a Step I grievance within five business days after attempting to verbally resolve the issue with the staff member involved. If not resolved, a prisoner must then file a Step II and III appeal. Plaintiff did not properly complete the grievance process regarding his Complaint allegations. Should the Court dismiss Plaintiff's unexhausted Complaint allegations?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### 1.   Lack of Personal Involvement

Even under the less stringent standard allowed for *pro se* complaints, the complaint must allege facts sufficient to show that a legal wrong has been committed and that it was committed by the named defendants.  Conclusory, unsupported allegations of constitutional deprivation do not state a claim.  *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

### 2.   Legal Standard for Exhaustion under 42 U.S.C. § 1997e(a)

Under 42 U.S.C. § 1997e(a), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust all available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Supreme Court has held that exhaustion requires proper exhaustion, which means that the prisoner must complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81 (2006).

## STATEMENT OF FACTS

Plaintiff, Marcus Walker ("Walker"), is a *pro se* prisoner who is currently confined in the Michigan Department of Corrections ("MDOC") at the Gus Harrison Correctional Facility (ARF), Adrian, Michigan. Walker's Complaint is filed under 42 U.S.C. § 1983 and protests infringement of his civil rights, alleging violations of the Eighth Amendment of the United States Constitution.

Dr. Carmen McIntyre-Leon is the current Chief Medical Officer for MDOC, and Mary Velarde is a Registered Nurse employed at ARF.

"On February 1, 2018, Plaintiff injured his right shoulder and arm while working out in the prison's weight room.  In September 2018, an MRI performed at a Henry Ford Health System facility showed that he had a near complete tear of his rotator cuff."  (ECF No. 4, PageID.68-69.)  "Plaintiff alleges the delay in treatment and failure to adequately treat his injury has resulted in permanent disability and that he continues to suffer from severe, debilitating pain which severely impacts and restricts his function."  (ECF No. 4, PageID.69.)

## ARGUMENT

**I.     Walker fails to state how MDOC Defendant Dr. McIntyre-Leon was personally involved in any unconstitutional conduct.**

To state of claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

MDOC Defendant Dr. McIntyre-Leon is cognizant of the well-settled maxim that *pro se* complaints are held to a "less stringent standard" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). But even under the less stringent standard allowed for *pro se* complaints, the complaint must allege facts sufficient to show that a legal wrong has been committed and that it was committed by the named defendants. Conclusory, unsupported allegations of constitutional deprivation do not state a claim. *Ana Leon T. v. Federal*

2

*Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

The court must determine whether an allegation contains enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007). A claim is considered to be facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard does not amount to a "probability" requirement, it requires more than a simple possibility that a defendant has acted unlawfully. *Id.*

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *Twombley*, 550 U.S. at 555. At a minimum, in order to state a claim a plaintiff must make sufficient allegations to give a defendant fair notice of a claim. *Twombley*, 550 U.S. at 555. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *Frazier v.*

3

*Michigan*, No. 02-1160; 2002 U.S. App. LEXIS 14881 at **5 (6th Cir. July 22, 2002).

Moreover, the Sixth Circuit has held that "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quotation omitted). In other words, the plaintiff must demonstrate that the supervisory "official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

A supervisory official's awareness after the fact of alleged illegal conduct does not provide a basis for imposition of damages under 42 U.S.C. § 1983. *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989). Merely being aware of a prisoner's complaint and failing to take corrective action is insufficient to impose liability on supervisory personnel under § 1983. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee*, 199 F.3d at 300. "Because vicarious liability is inapplicable to *Bivens* and

4

§ 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the

Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Walker's Complaint contains 2 references to Dr. McIntyre-Leon;

she's the Chief Medical Officer (CMO) for MDOC (ECF No. 1, PageID.22

at ¶23) and as the CMO, she works with MDOC and Corizon "to

implement policies, analyze health data, and identify area[s] of

improvement". (ECF No. 1, PageID.22 at ¶115)

In short, Walker has failed to state how Dr. McIntyre-Leon was

personally involved in any unconstitutional conduct, and she is

therefore entitled to dismissal.

**II.  A prisoner must exhaust his administrative remedies
before filing a complaint under 42 U.S.C. § 1983. To
properly exhaust, a prisoner must attempt to resolve the
issue verbally within two business days of the offending
event. A prisoner must then file a Step I grievance within
five business days after attempting to verbally resolve the
issue with the staff member involved. If not resolved, a
prisoner must then file a Step II and III appeal. Plaintiff
did not properly file a grievance regarding his Complaint
allegations against any MDOC Defendant. The Court
should dismiss Plaintiff's Complaint against MDOC
Defendants Dr. McIntyre-Leon and RN Velarde.**

**A.  Legal Standard**

A prisoner-plaintiff no longer has to plead or demonstrate exhaustion to satisfy the PLRA requirements of 42 U.S.C. § 1997e(a); failure to exhaust administrative remedies is an affirmative defense that must be raised by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007). Under 42 U.S.C. § 1997e(a), a prison inmate cannot maintain a civil rights' action with respect to prison conditions brought under any federal law if he did not first exhaust all available administrative remedies.

The Supreme Court has held that exhaustion requires proper exhaustion, which means that the prisoner must complete the administrative review process. *Woodford v. Ngo*, 548 U.S. 81 (2006). Exhaustion of administrative remedies is a prerequisite to filing a prisoner lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "The plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Nussle*, 534 U.S. at 523; *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). Exhaustion is an issue that must be determined before the Court can review the merits of the plaintiff's claims and the remaining defenses raised by the defendants.

6

The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Nussle*, 534 U.S. at 525. The PLRA also was intended to "reduce the quantity and improve the quality of prisoner suits." *Id.* at 524.

Requiring proper exhaustion serves all of these goals. It gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors. *Woodford,* 548 U.S. at 94. This is important in relation to prison systems because it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Preiser v. Rodriguez*, 411 U.S. 475, 491-492 (1973). Thus, it is essential for a plaintiff to properly exhaust his administrative remedies before filing suit by filing a grievance that complies with the prison grievance system regarding the allegations made in his complaint.

An untimely grievance, or otherwise improperly filed grievance, even though appealed through all steps of a grievance procedure, does not fulfill the exhaustion requirement of 42 U.S.C. § 1997e(a). Permitting an untimely or otherwise improperly filed grievance, even though appealed through all steps, to satisfy § 1997e(a)'s requirement "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford,* 548 U.S. at 97. The *Woodford* court explained:

> A prisoner who does not want to participate in the prison grievance process will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction …. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration had no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95.

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to

claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 219.

## B.    The applicable MDOC grievance policy, PD 03.02.130

The administrative process applicable to Plaintiff's claims is governed by MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (Effective date 03/18/2019). The policy directive states, in pertinent part, as follows:

> F.    Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.
>
> * * *
>
> J.    […].  A grievance shall be rejected by the Grievance Coordinator if:
>
>> 5.    The grievance is filed in an untimely manner
>>
>> * * *
>>
>> 9.    The prisoner is grieving a decision made in a Class I misconduct hearing or other hearings conducted by Administrative Law Judges (ALJ's) employed by the Michigan Department of Licensing and Regulatory Affairs (LARA), including property disposition and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing).

* * *

Q.     Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with staff.

* * *

S.     A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

* * *

W.    Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator designated for the facility, field office or other office being grieved….

(MDOC Defendants' Exhibit A).

## C.   Walker has not properly exhausted his Complaint allegations as to any MDOC Defendant because he did not

10

**properly complete the grievance process regarding those issues raised in his Complaint.**

Walker has filed eleven Step III grievance appeals while incarcerated at ARF during the timeframe of his complaint. (MDOC Defendants' Exhibit B).

In Grievance ARF-21-03-0349-28I, Walker complained at Step I about PA Jindal. (MDOC Defendants' Exhibit B, pin cite 9-13). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the issue being grieved were to be included. (MDOC Defendants' Exhibit A at ¶R). "Under the Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and *names of all those involved in the issue* being grieved' in their initial grievance." *Reed-Bey v. Pramstaller,* 603 F.3d 322, 324 (6th Cir. 2010) (emphasis added). This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-20-12-2458-12Z1, Walker complained at Step I about "Corizon and it's employees". (MDOC Defendants' Exhibit B, pin cite 14-18). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names

11

of all those involved in the issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-21-01-0006-28I, Walker stated at Step I that he sent numerous medical kites, one of which was responded to by RN Velarde indicating that he had an appointment in February with the requested medical provider.  (*Id.,* pin cite 19-23). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon despite the requirement that the names of all those involved in the issue being grieved were to be included.  Furthermore, this grievance was rejected for failure to attempt to resolve before filing.  That rejection was upheld at Steps II and III.  "As long as the state clearly rejects a grievance for a reason explicitly set forth in the applicable grievance procedure, a subsequent § 1983 claim based on the grievance will be subject to dismissal for failure to properly exhaust." *Burnett v. Howard,* No. 2:09-cv-37, 2010 U.S. Dist. LEXIS 30499, at *3 (W.D. Mich. Mar. 30, 2010) (quotation marks omitted). (MDOC Defendants' Exhibit C). Since Walker failed to follow the proper procedures, this grievance does not exhaust any of his Complaint allegations involving RN Velarde.

In Grievance ARF-19-10-2533-27Z, Walker complained at Step I about "Corizon and their staff", Warden Campbell and Director Washington. (MDOC Defendants' Exhibit B, pin cite 24-28). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-19-10-2379-28I, Walker complained at Step I about Dr. Greiner. (*Id.,* pin cite 29-34). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-19-07-1712-28I, Walker complained at Step I about Dr. Greiner and PA Jindal. (*Id.,* pin cite 35-42). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the

13

issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-19-01-0227-12D1, Walker complained at Step I about RN Frenick. (*Id.,* pin cite 43-48). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-18-11-3108-12I, Walker complained at Step I about PA Jindal. (*Id.,* pin cite 49-53). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-18-08-2101-12F, Walker complained at Step I about Dr. Greiner. (*Id.,* pin cite 54-61). Nowhere in this Step I grievance

14

does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-18-04-1061-12D1 Walker complained at Step I about Dr. Greiner. (*Id.,* pin cite 62-66). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

In Grievance ARF-18-04-1086-12D1, Walker complained at Step I about RN Solomonson. (*Id.,* pin cite 67-75). Nowhere in this Step I grievance does Walker name Dr. McIntyre-Leon or RN Velarde despite the requirement that the names of all those involved in the issue being grieved were to be included.  This grievance does not exhaustion Walker's complaint allegations involving Dr. McIntyre-Leon or RN Velarde.

Walker has not properly exhausted since he did not follow the procedures of the policy by filing a Step III grievance appeal prior to filing this lawsuit. *Woodford*, 548 U.S. at 94-95.

Furthermore, *Jones v. Bock* reiterated the requirement of *Woodford*, that "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (internal citation omitted). The *Jones* Court further stated, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 219. MDOC Defendants Dr. McIntyre-Leon and RN Velarde are entitled to dismissal.

## CONCLUSION AND RELIEF REQUESTED

Walker has failed to state a constitutional claim against MDOC Defendant Dr. McIntyre-Leon, and has failed to exhaust administrative remedies on his claims against both Dr. McIntyre-Leon and RN

Velarde. The Court should therefore dismiss Dr. McIntyre-Leon and

RN Velarde from this lawsuit.

Respectfully submitted,

*s/ Allan J. Soros (P43702)*
Assistant Attorney General
Attorney for MDOC Defendants
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
sorosa@michigan.gov
Dated: January 25, 2023    P43702
Soros\Walker 2022-0363663-A\MDOC Defs MSJ & BIS (Exhaustion)

## CERTIFICATE OF SERVICE

I certify that on **January 25, 2023**, I electronically filed **MDOC DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION, BRIEF IN SUPPORT, INDEX OF EXHIBITS, and EXHIBITS A through C,** with the Clerk of the Court using the ECF system and I certify that my secretary, Joleen McQuiston, has mailed by U.S. Postal Service the papers to the following non-ECF participant(s):

Marcus Walker #374618
*In Pro Per*
Gus Harrison Correctional Facility
2727 East Beecher Street
Adrian, MI 49221

*s/ Allan J. Soros (P43702)*
Assistant Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
sorosa@michigan.gov
(517) 335-3055
P43702

17