UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS L. WALKER,

    *Plaintiff,*

v.

DR. MARY GREINER, et al.,

    *Defendants.*

                                             /

Case No. 2:21-cv-12874
District Judge Denise Page Hood
Magistrate Judge Patricia T. Morris

## **ORDER ON MOTION FOR WITHDRAWAL AND 120 DAY STAY OF PROCEEDINGS**

I.    **Introduction**

Chapman Law Group represents Corizon Health and its Michigan employees. Corizon pays for the legal services provided to its employees, and if its employees are held liable, Corizon also indemnifies them for their damages. Because Corizon recently filed for bankruptcy, Chapman believes that disputes might arise between Corizon and its employees regarding the defense and indemnity agreements. So, to avoid any conflicts of interest, Chapman moved to withdraw from representing Corizon and its employees. But the firm did so without detailing the contours of these conflicts, without discussing whether its clients could afford new counsel, and without considering the prejudicial impact withdrawal might have on its clients. For

1

the following reasons, Chapman's motion to withdraw is **DENIED WITHOUT PREJUDICE**.

## II.    Background

Marcus Walker brought this prisoner civil rights action against Corizon Health, a healthcare provider formerly contracted by the MDOC. (ECF No. 1, PageID.1, 3, ¶ 24). Williams's complaint also names six Corizon employees: Vivien Dorsey, Rickey Coleman, Mary Greiner, Rosilyn Jindal, Keith Papendick, and Kaelynn Pfiel. (*Id.* at PageID.2, ¶¶ 4–5, 10, 13, 15, 17). Corizon pays for the legal defense of its employees, and it indemnifies its employees for their civil liability. (ECF No. 54, PageID.362). The Chapman Law Group entered its appearance on behalf of all six employees, but because Corizon Health has not yet been served, Chapman has not formally entered an appearance on behalf of Corizon. (ECF Nos. 16, 17). But despite never having entered a formal appearance, Chapman states that it has represented Corizon throughout this litigation. (ECF No. 54, PageID.362, ¶ 2).

On February 13, 2023, Corizon filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (*In re Tehum Care Serv's, Inc.*, Case No. 23-90086, ECF No. 1 (Bankr. S.D. Tex. Feb. 13, 2023)). Chapman does not represent Corizon in its bankruptcy proceedings.

After Chapman learned of Corizon's bankruptcy petition, it grew concerned that its representation of the Defendants would present a conflict of interest. (ECF No.54, PageID.362–64). Chapman did not elaborate on how Corizon and its employees' interests conflicted, and it did not provide any information regarding the employees' ability to afford new counsel if Chapman withdrew from representation. Nonetheless, Chapman moved to withdraw from representing Corizon and each employee except for Mary Greiner. In addition, Chapman requested that the Court impose a 120 day stay following the firm's withdrawal to assist its clients in securing new counsel. (*Id.* at PageID.391). Greiner hired co-counsel from a separate law firm five days after Chapman moved to withdraw. (ECF No. 56).

### III. Analysis

The local rules provide that an attorney may only withdraw from representation "on order of the court." E.D. Mich. LR 83.25(b)(2). While the court has discretion to either "grant or deny an attorney's motion to withdraw as counsel," its decision must be guided by the applicable professional responsibility rules regarding withdrawal, unless application of those rules would "work severe prejudice on the client or third parties." *Sec'y of Labor v. Monroe Trades Corp.*, No. 1:17-cv-272, 2019 WL 11767598, at *1 (S.D. Ohio Apr. 22, 2019) (internal quotation marks omitted) (quoting *Brandon v. Blech*, 560 F.3d 536, 537–38 (6th Cir. 2009)); *see also Farr v. Winn*, No. 18-11092, 2023 WL 424713, at *1 (E.D. Mich.

Jan. 26, 2023); E.D. Mich. LR 83.20(j). Under Michigan's Rules of Professional Conduct, an attorney must withdraw from a matter if continued "representation will result in violation of the Rules of Professional Conduct." Mich. R. Prof'l Conduct 1.16(a)(1) (2022). But even if a lawyer demonstrates that continued representation of a client will present a conflict of interest, the lawyer must continue to represent the client if "ordered to do so by a tribunal . . . ." Mich. R. Prof'l Conduct 1.16(a), (c).

Here, Chapman argues that it must withdraw from representing both Corizon and its employees because representing these parties simultaneously would present a conflict of interest. (ECF No. 54). But while Chapman concludes that the employees' and Corizon's interests are in conflict "by virtue of the bankruptcy," it never elaborates on how the bankruptcy might place its clients' interests in conflict. (*Id.* at PageID.361). Yet despite its hazy argument, Chapman appears to be concerned that Corizon and its employees may now have diverging interests regarding Corizon's agreements to indemnify its employees and to "provide" its employees with legal representation. (*Id.*)

Accordingly, to decide whether Chapman may withdraw from this matter, the Court must first determine whether Chapman's concurrent representation of Corizon and its employees presents a conflict of interest, and if so, whether Chapman's

4

withdrawal from this matter would impose "severe prejudice" on Corizon, its employees, or any third party.

### A. Conflict of Interest

Michigan Rule of Professional Conduct 1.7 prohibits two kinds of conflicts between current clients: direct conflicts and indirect conflicts. John W. Allen, *Conflicts of Interest—The Basics*, 78 Mich. Bar J. 60, 62 (1999). A direct conflict under Rule 1.7(a) arises where a lawyer represents a client in a matter that is "directly adverse to another client." Mich. R. Prof'l Conduct 1.7(a). For example, a lawyer can neither represent opposing parties in a single case nor "advocate against a" current client in an "unrelated" matter. Mich. R. Prof'l Conduct 1.7 cmt. An indirect conflict, under Rule 1.7(b), occurs where a lawyer's representation of a client "may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests." Mich. R. Prof'l Conduct 1.7(b).

There is no direct conflict between Chapman's representation of Corizon and its employees. Notwithstanding any potential disputes between the employees and Corizon regarding the defense and indemnity agreements, Chapman need not advocate against either Corizon or its employees to continue defending its clients in this matter. *See* Mich. R. Prof'l Conduct 1.7(a). Nor has Corizon's bankruptcy thrust Chapman into a position where it must advocate against any of its clients—Chapman does not represent Corizon in its bankruptcy case and Chapman has not

5

expressed any intent to assist the employees in securing indemnification and payment of legal fees.

However, Chapman's representation of the employees appears to be materially limited by the firm's responsibilities to Corizon. Rule 1.7(b) applies where a "lawyer's other responsibilities or interests" might prevent him or her from considering, recommending, or carrying out "an appropriate course of action for the client." Mich. R. Prof'l Conduct 1.7 cmt. In other words, a conflict of interest exists if a lawyer's responsibilities might "foreclose[] alternatives that would otherwise be available to the client." *Id.*

By prohibiting representation where there "may" be a conflict, rather than where there "is" a conflict, the rule applies to potential, not just actual, conflicts of interest. *See* Mich. R. Prof'l Conduct 1.7(b); *see also Barkley v. City of Detroit*, 204 Mich. App.194, 203–04 (1994). But even so, Rule 1.7(b) is not implicated merely because a conflict is "possible"—there must be a "material risk" that a conflict could arise. Mich. R. Prof'l Conduct 1.7(b), cmt.; *see also* Model Rules of Prof'l Conduct r. 1.7(a)(2) cmt. 8 (Am. Bar Ass'n 2021) (explaining that a conflict of interest warranting "disclosure and consent" is triggered only where there is a "significant risk" that an actual conflict might eventuate, not where a potential conflict is "merely possible"). "The critical questions are the likelihood that" conflicting interests "will eventuate," and, if so, whether that difference in interests will "materially interfere

6

with the lawyer's independent professional judgment . . . ." Mich. R. Prof'l Conduct 1.7 cmt. If there is a significant risk that a lawyer might not be able to pursue an appropriate course of action due to his or her obligations to another client, the lawyer must withdraw from representation unless (1) "the lawyer reasonably believes the representation will not be adversely affected," and (2) "the client consents" to representation "after consultation." Mich. R. Prof'l Conduct 1.7(b)(1)–(2).

Here, Chapman's responsibilities to Corizon already prevent it from recommending all appropriate courses of action to the employees. Corizon's bankruptcy petition raises questions concerning its solvency, and the bankruptcy case itself may affect Corizon's ability to indemnify the employees. Accordingly, it may be in the employees' interest to intervene in Corizon's bankruptcy case to safeguard their interest in the indemnity agreement.

Although none of the Defendants yet have a right to payment under the indemnity agreement, they are nonetheless Corizon's creditors. The bankruptcy code defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the" debtor filed a voluntary petition. 11 U.S.C. § 101(10)(A) (2018). A claim, in turn, is "any right to payment," regardless of whether that right is "contingent" or "unmatured." *Id.* § 101(5)(A). Accordingly, the Sixth Circuit has held that entities with contingent—but not yet realized—rights to indemnity are creditors under the bankruptcy code. *In re H & S Transp. Co., Inc.*, 939 F.2d 355,

358–59 (6th Cir. 1991); *accord In re Parks*, 281 B.R. 899, 901–02 (Bankr. E.D. Mich. June 5, 2002); *In re Manville Forest Prod. Corp.*, 225 B.R. 862, 865–67 (Bankr. S.D.N.Y. 1998). Corizon's employees, therefore, are its creditors even though they have no right to payment under the indemnity agreement unless this Court renders a judgment against them, and they may be able to enforce their rights as creditors in Corizon's bankruptcy case. *See In re RnD Eng'g, LLC*, 556 B.R. 303, 310–11 (Bankr. E.D. Mich. 2016) (quoting 11 U.S.C. § 1109(b) (2018)) (explaining that creditors generally have a right to "appear and be heard" in a Chapter 11 proceeding).

Prudent counsel would at least explore this course of action. But because of Chapman's loyalties to Corizon, it cannot even recommend intervention in the bankruptcy case without directly harming Corizon's interests. *See In re Am. Printers & Lithographers, Inc.*, 148 B.R. 862, 865 (Bankr. N.D. Ill. 1992) (explaining that creditors and debtors have adverse interests in bankruptcy proceedings); *see also* Mich. R. Prof'l Conduct 1.7 cmt.

Chapman's relationship with Corizon would also foreclose it from considering all options available to the Defendants concerning Corizon's agreement to pay for their legal defense. If Corizon stops paying for its employees' defense, and Chapman withdraws from this case (either due to a conflict of interest or

8

nonpayment),[1] then the financial burden of securing counsel would fall on the employees. Although Corizon has not yet repudiated its contract to provide these employees with legal representation, Corizon's insolvency (as evidenced by its bankruptcy petition) may give its employees "reasonable grounds" to believe that Corizon will not continue to pay for their representation. *See* Restatement (Second) of Contracts §§ 251(1), 252 cmt. a (Am. Law Inst. 1981). Accordingly, it may be in the employees' best interest to seek assurances from Corizon that it can continue to pay for their representation, and if Corizon cannot provide adequate assurances, then they may wish to sue Corizon for breach of contract under an anticipatory repudiation theory. *Id.*; *see also Chalk Supply LLC v. Ribbe Real Estate LLC*, No. 345805, 2020 WL 39991, at *8 (Mich. Ct. App. Jan. 2, 2020).

But assisting the employees in seeking assurances from Corizon would be directly adverse to Corizon's own interests. Indeed, Corizon is already in bankruptcy, and a request for reasonable assurances could expose it to additional liability. Moreover, Corizon and its employees have conflicting interests regarding

---

[1] Corizon does not purport to withdraw for nonpayment. And for good reason: such a motion would be premature under Michigan's professional responsibility rules. Michigan Rule of Professional Responsibility 1.16(b)(4) permits a lawyer to withdraw for nonpayment only where a client "fails substantially to fulfill an obligation to the lawyer" and only where the lawyer gives "reasonable warning" that he or she "will withdraw unless the obligation is fulfilled." Thus, the Rule only permits lawyers to withdraw *after* a client fails to pay legal fees—a lawyer cannot withdraw in mere anticipation of nonpayment. *Cf. Allstate Ins. Co. v. Spina*, No. 20-CV-1959, 2020 WL 7753266, at *2 (S.D.N.Y. July 27, 2020).

the degree to which Corizon should assure them of its ability to indemnify. In sum, Chapman's simultaneous representation of Corizon and its employees presents a conflict of interest.

### B. Prejudice

Because of this conflict of interest, withdrawal is presumptively appropriate. *See Brandon*, 560 F.3d at 538; *see also Yazaki North Am., Inc. v. Ueda*, No. 2:16-cv-12941, at *1 (E.D. Mich. Oct. 16, 2018). But even so, the Court may prohibit Chapman from withdrawing if the employees, or any other party, would be "severely prejudiced" by Chapman's withdrawal. *Brandon*, 560 F.3d at 538 (citing *Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 310 F.3d 537, 539 (7th Cir. 2002)); *see also* Mich. R. Prof'l Conduct 1.16(c). Without more, the mere fact that withdrawal would leave a party without representation does not amount to "severe prejudice." *Brandon*, 560 F.3d at 538. Indeed, the presumption in favor of withdrawal would be "meaningless" if a party could demonstrate severe prejudice merely by establishing harms that are inherent to every withdrawal. *King v. Curtis*, 610 F. App'x 534, 539 (6th Cir. 2015).

To determine whether a party would be severely prejudiced by its attorney's withdrawal, courts must compare the prejudicial impact on the affected party to the countervailing policy concerns in favor of withdrawal. In *Brandon v. Belch*, for example, the Sixth Circuit held that a defendant who neglected to pay his attorney's

fees would not be severely prejudiced by withdrawal because the law firm's interest in securing payment for its services outweighed any prejudicial impact on the defendant. 560 F.3d at 538–39. As to the impact of withdrawal on the defendant, the Court noted that the attorney's withdrawal did not have an unusually prejudicial effect. *Id.* at 538. Quite the opposite, the attorney moved for withdrawal while the proceedings were stayed, there were "no imminent deadlines," and no party identified any prejudicial effect. *Id.* In contrast, the Court noted that it would impose "a severe burden" on the firm if it required counsel to "continue representing" a client who refused to pay. *Id.* at 538–39 (citing *Rivera-Domenech v. Calvesbert Law Offices PSC*, 402 F.3d 246, 249 (1st Cir. 2005)). Because the Defendant could not identify any "countervailing prejudicial concerns" that would overcome the "weighty policy" interests in support of withdrawal, the Sixth Circuit held that the district court abused its discretion by denying the attorney's motion to withdraw. *Id.*

Here, however, the prejudicial impact on the employees outweighs any policy concerns furthered by Chapman's withdrawal. Unlike in *Brandon*, Chapman does not seek withdrawal for its own benefit. Rather, the firm appears to be concerned that it cannot fully advise the employees on any potential disputes they may have with Corizon regarding the indemnity and defense agreements. (ECF No. 54). But while this conflict of interest could certainly harm the employees, they are more likely to suffer a greater harm from the withdrawal itself. At this time, Chapman

11

and the employees can only speculate as to whether Corizon will breach either agreement, and while Chapman cannot help the employees pursue some options they might otherwise have to secure their interests in these agreements, the employees stand to gain little from these options relative what they may lose from an adverse judgment in this case. Further, to the extent that a dispute might arise regarding the indemnity agreement, the employees can avoid that dispute entirely by successfully defending themselves in this action—which they are far more likely to do with the assistance of counsel.

Moreover, there is no guarantee that any of the Defendants will be able to find new counsel, even with a 120 day stay. These employees have not articulated any desire to end their attorney-client relationship with Chapman, and Chapman has provided no information regarding their ability to afford counsel. Unlike a pro se plaintiff who can retain counsel willing to work for a contingency, the employees will likely need to pay directly for their representation. Finding affordable counsel willing to accept either of them as a client may prove to be a difficult task.

In short, Chapman identifies a conflict that could harm the employees. But under these circumstances, withdrawal is a solution more harmful than the disease it is meant to cure. Accordingly, Chapman shall not be permitted to withdraw from representing Coleman, Dorsey, Pfeil, or Jindal.[2]

---

[2] Chapman's filing suggests that the firm.

Nor will Chapman be permitted to withdraw from representing Greiner. Because Greiner has hired counsel outside of the Chapman Law Group, she likely would not be prejudiced by Chapman's withdrawal. (ECF No. 56). But curiously, Greiner is the sole Corizon defendant whom Chapman did not move to withdraw from representing. (ECF No. 54). That is apparently because Chapman believes that it has already terminated its attorney-client relationship with Greiner. In its motion to withdraw, Greiner is notably absent from Chapman's list of clients, and Greiner's new counsel listed himself as Greiner's sole attorney in his notice of appearance. (*See id.* at PageID.361, ECF No. 56, PageID.373). But again, this Court's local rules only permit counsel to withdraw from representation "on order of the court." E.D. Mich. LR 83.25(b)(2). Attorneys may not silently duck out of representation without the Court's permission. *Id.*; *see also* Mich. R. Prof'l Conduct 1.16(a), (c). Until Chapman moves to withdraw from representing Greiner, and the Court grants that motion, Chapman shall continue to represent Greiner alongside her new attorney.

In addition, the Court will not permit Chapman to withdraw from representing Corizon, as it is well established that corporations are "legally incapable of appearing in court unless represented by counsel . . ." *Philos Tech., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857–58 (7th Cir. 2011); *see also Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018) (citing *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 829

(1824)); (*cf. Harp v. Austin*, No. 2:21-cv-12446, ECF No. 34, PageID.332 (prohibiting Chapman from withdrawing from its representation of Corizon)).

## III. Conclusion

For these reasons, Chapman Law Group's motion to withdraw and stay proceedings is **DENIED WITHOUT PREJUDICE**.

Date: April 4, 2023                               s/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge